UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TREMAYNE DURHAM, | Civil Action No.  22-5482 (RK) (TJB ) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| NEW JERSEY DEPARTMENT OF CORRECTIONS, et al., | |
| Defendants. | |

Plaintiff Tremayne Durham has filed a Complaint raising federal and state law claims for relief.  (ECF No. 1.)  The District Court previously granted his application to proceed *in forma pauperis* ("IFP application"), and the matter was transferred to the undersigned.  (ECF Nos. 2-3.) Federal law requires this Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted and/or to dismiss any defendant who is immune from suit.  *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). Conclusory allegations do not suffice.  *See id.*  Because Plaintiff is proceeding pro se, the Court construes his allegations liberally.  *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

I.    RELEVANT BACKGROUND AND ALLEGATIONS

Plaintiff is incarcerated at New Jersey State Prison ("NJSP") and is a frequent litigator in this District.  In this action, he sues the New Jersey Department of Corrections ("NJDOC"), University Correctional Healthcare ("UCHC"), and Amy Emrich, an Administrator at NJSP, for alleged violations of his civil rights and right to accommodations for his disability.  Plaintiff was

diagnosed with spinal stenosis in 2018 and has filed a series of lawsuits in this District alleging that prison officials have violated his constitutional rights and failed to provide him with reasonable accommodations for that disability. In *Durham v. Kelly*, Civ. No. 21-4565, which the Court reviews as background for this action, Plaintiff alleged that he was prescribed a walking cane in November 2019, and he was not permitted to bring the walking cane to the quarantine unit in May 2020. According to the Complaint in *Durham v. Kelly*, Plaintiff approached numerous prison officials and told them about his pain and his need for a cane, a shower chair, and medical attention, but they denied him accommodations. (*See* Civ. No. 21-4565, ECF No. 1, Complaint at ¶¶ 22-44.) On May 31, 2020, Plaintiff was in the shower in the quarantine unit and allegedly experienced excruciating lower back pain and fell because he did not have a shower chair or his cane. (*Id.* at ¶ 48.) Plaintiff received treatment for his injuries, and on or about February 27, 2021, Plaintiff filed a civil action alleging claims under 42 U.S.C. § 1983 and under the ADA/RA and seeking injunctive relief and damages. (*See, Generally*, Complaint.) *Durham v. Kelly* remains pending, and the District Court recently appointed pro bono counsel for Plaintiff.[1]

This action appears to pick up where *Durham v. Kelly* left off, but the Complaint consists of a series of grievances and letters Plaintiff wrote about his need for various accommodations. In his Complaint, Plaintiff alleges that he received a diagnosis of lumbar stenosis in January 2018, and that the condition causes him severe pain and severely limits his standing and walking. (*See* Civ. No. 22-5482, ECF No. 1, Complaint at ¶ 7.) Plaintiff further alleges that in June 2020, he filed grievances regarding the failure to provide him handrails in the shower while he was

---

[1] The District Court originally dismissed Plaintiff's Complaint without prejudice for failure to state a claim for relief. Plaintiff appealed that decision, and the Third Circuit vacated the dismissal and remanded the matter, finding that Plaintiff stated claims for relief under § 1983 and the ADA/RA. *See Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023).

quarantined in May 2020, and that Defendant Amy Emrich responded to his grievances. (*Id.* at ¶¶ 8-9 (citing ECF No. 1-5 at 1-2.)  In an inquiry filed on June 13, 2020, Plaintiff stated that he fell in the shower on May 31, 2020, because there are no handrails in the quarantine unit for inmates with disabilities. (*See* ECF No. 1-5 at 1-2.)  In her response, Emrich stated that Plaintiff should have notified a staff member if he required assistance in the shower due to a lack of handrails, and that staff members could not have known he needed assistance because his regularly-assigned housing unit did not have handrails. (*See id.*)  Plaintiff followed up with a grievance on May 30, 2020, and Emrich responded as follows: "In the future, please advise custody staff if you are having mobility issues that would require the use of handrails in the shower." (*See id.* at 2.)  In the grievances answered by Emrich, Plaintiff does not state that he has lumber stenosis, mention his cane, or provide any other information about his alleged disability.  The Complaint contains no other facts about Emrich's involvement in denying accommodations for Plaintiff.

Plaintiff's Complaint jumps ahead to April 28, 2021, when he wrote another grievance stating that he needed "alternative housing[.]" (Complaint at ¶ 10.)  In that grievance, Plaintiff states that he uses a cane and takes pain medication for his serious back condition.[2]  (ECF No. 1-5 at 3.)  Plaintiff further contends in the grievance that he fell twice—once in cell on toilet water on the floor from a broken toilet and once outside his cell— and there were no handrails where he fell.  (*Id.*)  Craig Sears responded to the grievance on May 2, 2021, stating that "Sgt. Holder responded to this matter already and reported to you his findings." (*Id.*)  In his response, Plaintiff complains about a lack of handrails in the cell and his housing unit and complains that the officers failed to render medical aid.  (ECF No. 1-5 at 3.)  On May 5, 2021, Jonathan Gramp responded,

---

[2] Plaintiff does not otherwise mention his cane in this Complaint.

stating that "Medical has been advised and your case is being reviewed for alternate housing if appropriate." Gramp also noted that Plaintiff was provided with medical aid. (*Id.*)

Plaintiff further alleges that on May 1, 2021, he wrote to NJDOC about being placed on a unit with handrails and needing assistance with cleaning his cell and moving his property but received no response. (Complaint at ¶ 11.) Plaintiff wrote the following:

> To whomever it may concern :
>
> I write to you in regard to being placed on a unit that has handrails and disability devices and also someone available to assist me in cleaning my cell by moving my property etc. I have a serious back condition and was injured in the past on different units in different locations including the shower area. Lifting and bending down to pick up my property exacerbates my already serious back condition.

(ECF No. 1-5 at 5.) Plaintiff alleges that he wrote an identically-worded letter to the University Correctional Healthcare on September 1, 2021, but he also received no response. (Complaint at ¶ 12 (citing ECF No. 1-5 at 4).)

On July 30, 2021, Plaintiff wrote another grievance stating that he has a serious back condition and wished to be placed on a unit that could accommodate him. (*See* Complaint at ¶ 12 (citing ECF No. 1-6 at 1).) Rachael Fromhold responded to his grievance and advised that Plaintiff should bring up his need for medical housing with his medical provider through the sick call process. (ECF No. 1-6 at 1.) In his response, Plaintiff stated that he was previously injured, that he cannot shower or clean his cell, and believed he would be placed in medical housing. Cindy Ford responded that his appeal would "be forwarded to the administration at your facility for any action deemed appropriate." (*Id.*)

Plaintiff alleges that he filed a sick call request on November 15, 2021, and requested to be placed on a unit with showers with handrails and other disability devices. (Complaint at ¶ 13.)

Plaintiff attaches a grievance he wrote on that date, in which he states that he "would like to be placed in a medical unit so I could take showers with handrails/and other disability assistive devices and also have assistance cleaning my cell due to my disability." (ECF No. 1-6 at 2.) On November 16, 2021, K. Mosley-Massenat, responded to the grievance and stated that she had reviewed Plaintiff's records that "their [sic] is no indication that you need to be placed on a medical unit. I will forward your request to the provider. Thanks for your patience." (*Id.*)

Plaintiff alleges that he was not seen by a provider and was subsequently moved to "2EE quarantine." (Complaint at ¶ 15.) On January 2, 2022, while in 2EE quarantine, Plaintiff alleges he experienced excruciating back pain in the shower and fell. (Complaint at ¶ 16.) Plaintiff alleges that there were no handrails in the shower where he fell, and he was rendered unconscious by the fall.[3] (*Id.*) Plaintiff does not provide any facts about the prison official who authorized his transfer to 2EE quarantine; nor does he allege that this prison official knew about his disabilities and the lack of handrails in 2EE quarantine.

Plaintiff was sent to the emergency room at Capitol Health Hospital where he received an MRI and medication and was diagnosed with degenerative disc disease and a lumbar fall. (Complaint at ¶¶ 17-19 (citing ECF No. 1-7 at 1-5).) Plaintiff was sent back to New Jersey State Prison in a wheelchair and received medical treatment for approximately three days. (*Id.* at ¶ 20 (citing ECF No. 1-7 at 3-5).)

On January 14, 2022, Plaintiff submitted a grievance about his fall on January 2, 2022. In that grievance, he stated the following:

> On 1/2/2022 while on quaranine [sic] 2EE unit I was in the shower when I had serious back pain that cascaded down to my legs and I fell hit my head and was unconcious [sic] this caused me pain, I have

---

[3] Plaintiff's exhibits include a chart note by Fay A. McKenzie, RN, which indicates that Plaintiff fell in the shower area and stated that he hit his head and back. (ECF No. 1-6 at 3.)

a serious back condition. Their [sic] were no handrails/shower chair etc[.] in the shower.

(ECF No. 1-8 at 1.)  Kelitta Mosley-Massena responded to the grievance on February 3, 2022, and stated that the matter was resolved by Plaintiff's visit to his provider.  (*Id.*)  Plaintiff wrote a second grievance on January 14, 2022, about his fall and the lack of handrails in the shower.  (ECF No. 1-9 at 1.)  Garyn Nathan responded to Plaintiff's grievance on February 4, 2022, stating: "I will contact the maintenance department.  If you need medical attention please drop a slip for a medical visit."

On February 2, 2022, Plaintiff filed two additional grievances, one of which he characterizes as an ADA grievance.  (Complaint at ¶¶ 24-25.)  Plaintiff contends that prison officials responded to his grievances but refused "to correct the problem."  (*Id.* at ¶¶ 26-33.)  In the first grievance, he complains that his serious back condition is exacerbated by cleaning his cell.  (ECF No. 1-9 at 1.)  In response, Keelee Kaminski wrote that Plaintiff had been treated by a medical provider for back pain and his request for medical housing had been denied because medical housing was not indicated.  Kaminski also stated that medical does not determine housing and cannot recommend medical housing without adequate documentation and advised him to submit a housing request to the DOC.  (*See id.*)  Plaintiff filed a response, in which he noted his fall on January 2, 2022, in the shower of the quarantine unit, which had no handrails, and his difficulty lifting his property to clean his cell.  (ECF No. 1-9 at 2.)  Kelitta Mosley-Massena responded that she reviewed Plaintiff's EMR chart and that Plaintiff has been seen several times regarding this inquiry.  (*Id.*)  In the second grievance, Plaintiff complained about his difficulty cleaning his cell and his prior injuries.  (ECF No. 1-9 at 3.)  Jessica McDuffie responded, listing it as a duplicate.  (*Id.*)  Plaintiff responded that it was not a duplicate and is an ADA grievance.

Anthony Gangi responded, stating that the issue had been addressed to medical, and it is a duplicate matter. (*Id.*)

Plaintiff brings claims under the ADA and RA, alleging that he has spinal stenosis and was injured after he fell in the shower without handrails. (Complaint at ¶¶ 35, 41.) Plaintiff further alleges that the need for an accommodation was obvious and that correctional and medical staff were put on notice by his inquiries, grievances, and appeals. (Complaint at ¶¶ 35-36, 39.) According to Plaintiff, NJDOC and UCHC intentionally discriminated against him by denying him access to a shower with handrails by reason of his disability. (*Id.* at ¶¶ 37-38 40.) Plaintiff also contends that the medical department can make recommendations with adequate documentation and had full access to his medical records. (*Id.* at ¶ 40.) Plaintiff alleges that NJDOC and UCHC receive federal funding. (*Id.* at ¶ 42.)

In a separate count, Plaintiff also alleges that Amy Emrich violated Plaintiff's Eighth Amendment rights and acted with deliberate indifference because she knew he was previously injured in the shower and didn't accommodate him, despite having authority to do so, which allegedly led to his second injury on 2EE in the shower. (*Id.* at ¶ 43.)

Plaintiff also brings negligence claims against the NJDOC, UCHC, and Emrich for failing to accommodate him, and against a Jane Doe Nurse Scheduler for failing to schedule him for a medical pass prior to his injury. (*Id.* at ¶¶ 44-47.) Plaintiff also brings a claim for Negligent Infliction of Emotional Distress against the NJDOC, RCHU, and Emrich based on the same facts. (*Id.* at ¶¶ 50.)

Plaintiff seeks a declaration that his constitutional rights have been violated, compensatory and punitive damages against each Defendant, a jury trial and costs in this suit. (Complaint at 11.) He does not seek injunctive relief. (*See id.*)

## II.    DISCUSSION

### a.  The Federal Claims

### 1.  The Eighth Amendment Claims under 42 U.S.C. § 1983

The Court begins with Plaintiff's Eighth Amendment claims against NJDOC, UCHC, and Emrich, which he brings pursuant to 42 U.S.C. § 1983.  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right. *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983).  To the extent Plaintiff brings any § 1983 claims against the NJDOC or against Emrich in her official capacities for damages, the Court dismisses these claims with prejudice, as neither a State nor its officials acting in their official capacities are "persons" under § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *see also Crooks v. Passaic Cnty. Sheriff's Department/Jail*, 2007 WL 923330, at *2 (D.N.J. Mar. 26, 2007) (collecting cases).

The Court next addresses the § 1983 claims against Emrich for damages in her individual capacity.  "To plead deliberate indifference under the Eighth Amendment, a plaintiff must allege that (1) he had a serious medical need, (2) the defendants were deliberately indifferent to that need; and (3) the deliberate indifference caused harm to the plaintiff." *Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023) (citing *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017)).  To be held liable under § 1983, a supervisor like Emrich must have had "personal involvement in the alleged wrongs." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207-08 (3d Cir. 1988); *see also Iqbal*, 556 U.S. at 676 (civil rights defendants may not be held liable under *respondeat superior* theory of liability).  There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307,

8

316 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015).  First, a

supervisor may be liable if he or she "'with deliberate indifference to the consequences, established

and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"[4]  *Id.*

(quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)

(alteration in original)).  "Second, a supervisor may be personally liable under § 1983 if he or she

participated in violating the plaintiff's rights, directed others to violate them, or, as the person in

charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id.*

Here, Defendant Emrich simply answered Plaintiff's inquiry and grievance after he fell in

the shower in 2020.  It is well established that the review or denial of a grievance is an insufficient

basis for personal involvement in a civil rights action.  *See Dooley v. Wetzel*, 957 F.3d 366, 374

(3d Cir. 2020) (dismissing civil rights claims where the only involvement alleged in the Complaint

is a prison official's review and denial of the plaintiff's grievance").  Because Plaintiff fails to state

a claim for relief under § 1983 against Emrich, the Court dismisses without prejudice the § 1983

claims against this Defendant.

The Court also dismisses without prejudice the § 1983 claims against UCHC.  A provider

of prison health services "cannot be held responsible for the acts of its employees under a theory

---

[4] "[T]o hold a supervisor liable. . . for their deficient policies. . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol*, 256 F.3d 136-37 (citing *Sample*, 885 F.2d at 1099).

of respondeat superior or vicarious liability." *See Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. Department of Social Services*, 436 U.S. 691 (1978)). Instead, a plaintiff must plead the elements of a *Monell* claim. *See, e.g., Estate of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019) (describing the two types of *Monell* liability). Because Plaintiff has not pleaded facts supporting a *Monell* claim against UCHC, the Court dismisses this entity without prejudice.

### 2. The ADA and RA Claims

The Court also construes Plaintiff to allege claims under Title II of the ADA and Section 504 of the RA against NJDOC, UCHC, and Emrich. The ADA creates a private cause of action for money damages against a public entity that violates its provisions. *See* 42 U.S.C. § 12133; *United States v. Georgia*, 546 U.S. 151, 154 (2006). State prisons qualify as public entities under the ADA. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998). To state a claim under the ADA, Plaintiff must allege that he is "a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288-89 (3d Cir. 2019). Because Plaintiff seek damages, and not injunctive relief, he must also plead intentional discrimination under a deliberate indifference standard. *See Durham*, 82 F.4th at 225; *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 262 (3d Cir. 2013). Intentional discrimination exists only where the defendants were at least deliberately indifferent – that is, where the defendant knew that harm to a federally protected right was substantially likely and failed to act upon that likelihood. *S.H. ex rel. Durrell*, 729 F.3d at 262-63. The elements of a claim under the RA are the same, except that the plaintiff must also show that the program in question received federal dollars. *Durham*, 82 F.4th at 225. In addition, although sovereign immunity does not bar suit

against state entities under the RA, ADA lawsuits against state entities are barred by sovereign immunity except where a plaintiff successfully alleges constitutional violations arising from the same conduct. *Durham*, 82 F.4th at 228-29; *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 172 (3d Cir. 2002) (quoting *Lane v. Pena*, 518 U.S. 187, 200 (1996)).

The Court assumes for purposes of screening that Plaintiff is a qualified individual with a disability, i.e., that he has spinal stenosis and requires the use of a cane, and that he was excluded from participation in a service, program, or activity by reason of his disability.[5]

Because Plaintiff's Complaint fails to state a claim for any constitutional violations, Defendants are entitled to sovereign immunity on the ADA claims, and the Court dismisses the ADA claims without prejudice on this basis. The Court also dismisses with prejudice the ADA and RA claims for damages against Emrich in her individual capacity because she is not subject to suit in her individual capacity. *See, e.g., Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002); *Matthews v. Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015)); *Kokinda v. Pennsylvania Dep't of Corr.*, 779 F. App'x 944, 949 (3d Cir. 2019) (dismissing plaintiff's "claims for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability.").

---

[5] The phrase "service, program, or activity" under Title II and the phrase "program or activity" under Section 504 are "extremely broad in scope and include[ ] anything a public entity does." *Furgess*, 933 F.3d at 289; *see also Yeskey*, 524 U.S. at 210 ("Modern prisons provide inmates with many recreational 'activities,' medical 'services,' and educational and vocational 'programs,' all of which at least theoretically 'benefit' the prisoners (and any of which disabled prisoners could be 'excluded from participation in')"). As such, "a prison's refusal to accommodate inmates' disabilities in such fundamentals as mobility, hygiene, medical care, and virtually all other prison programs constitutes a denial of the benefits of a prison's services, programs, or activities under Title II" of the ADA. *Furgess*, 933 F.3d at 290. The Third Circuit has specifically held that the provision of a shower is a service, program, or activity for purposes of the ADA and RA. *See id.*

As noted above, Plaintiff does not seek injunctive relief and only seeks damages.  In order to plead damages claims under the ADA or RA against NJDOC, UCHC, or Emrich in her official capacity, Plaintiff must show intentional discrimination and must plead facts showing that (1) Defendant "had knowledge that a federally protected right is substantially likely to be violated," and (2) Defendant "failed to act despite that knowledge."  *See Furgess,* 933 F.3d at 292.  In *Durham v. Kelly*, for example, the Third Circuit held that Plaintiff sufficiently alleged deliberate indifference under the RA and ADA based on the following facts:

> Durham pleaded sufficient facts to demonstrate that the Defendants had knowledge that a federally protected right—his right under the ADA to be free from disability discrimination—was substantially likely to be violated. Durham had a diagnosis of lumbar stenosis, a prescription for a cane, and had received his cane and been using it to walk in the facility prior to his quarantine. He made numerous prison officials aware that he had a cane, needed a cane to walk, and was in severe pain without it. Despite this, he was continuously denied his cane and shower accommodations. This alone was sufficient to allege a deliberate indifference claim. But Durham also pleaded that the denial of reasonable accommodations was intentional. Indeed, he alleged that denials were based on officials' claims that plaintiff "complain[ed] a lot" and was an "asshole." Thus, Durham's pleading was sufficient to establish a claim for deliberate indifference under the ADA.

*Durham v. Kelley*, 82 F.4th at 226 (cleaned up).

Here, in contrast, Plaintiff's allegations consist of a series of arms-length grievances and unanswered letters over a period of years in which he complains about a lack of handrails in the shower, his need for medical housing, and his need for assistance in cleaning his cell.  The letters sent to NJDOC and UCHC went unanswered, and none of his grievances were answered by the same prison official.  Emrich, who is the only prison official sued under the ADA or RA, answered Plaintiff's inquiry and grievance after his initial fall in 2020, and there are no well-pleaded facts showing that she knew he needed accommodations for his disability and failed to act.  Unlike the defendants in *Durham v. Kelly*, who interacted directly with Plaintiff, knew he used a cane to

ambulate, and saw his obvious need for accommodations, the various prison officials who answered Plaintiff's grievances had no direct contact with him and merely referred Plaintiff to the medical department, NJDOC housing, and prison administrators to obtain assistance and accommodations. These facts, without more, do not give rise to the inference that Defendants knew that harm to a federally protected right was substantially likely and failed to act upon that likelihood. As such, the Court finds that the Complaint does not state a damages claim for deliberate indifference under the ADA or RA.[6] Because Plaintiff only asks for damages and does not ask for injunctive relief, i.e., that Defendants provide handrails in the shower, medical housing, or assistance in cleaning his cell, the Court finds that he fails to state a claim for relief under the RA (and ADA) against the remaining Defendants.[7] The Court dismisses the remaining RA claims without prejudice on this basis.

### b. The State Law Claims

Because the Court has dismissed the federal claims, it next addresses whether to assert supplemental jurisdiction over the remaining state law claims. Where a federal court has original

---

[6] As discussed above, it is clear that prison official's response to a grievance without more does not amount to deliberate indifference under § 1983. The Third Circuit has stated that its "definition of deliberate indifference in the RA and the ADA context is consistent with our standard of deliberate indifference in the context of § 1983 suits by prison inmates." *S.H. ex rel. Durrell*, 729 F.3d at 263 n.23 (3d Cir. 2013) (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (holding that, in a § 1983 claim, deliberate indifference requires proof that the prison "knows of and disregards an excessive risk to inmate health or safety")). More recently, however, the Third Circuit stated that the standard for deliberate indifference under § 1983 is "a higher standard than proving deliberate indifference under the ADA, which does not require knowledge of a substantial risk of serious harm, but only that a federally protected right is substantially likely to be violated." *Durham*, 82 F.4th at 229 (citation omitted). Following *Durham*, the Court assumes the deliberate indifference standard under the ADA and RA is lower than the standard for deliberate under § 1983, but Plaintiff's allegations that he filed a series of grievances to various prison officials do not meet that lower standard.

[7] As noted above, Defendants are also entitled to sovereign immunity under the ADA because Plaintiff did not plead a constitutional violation.

jurisdiction over certain claims, it also has supplemental jurisdiction over all other related claims that form part of the "same case or controversy" under Article III of the United States Constitution. 28 U.S.C. § 1367(a); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966) (same).    Title 28 U.S.C. § 1367(c)(3) provides that district courts "may decline to exercise supplemental jurisdiction . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." *See also Kach v. Hose*, 589 F.3d 626, 650 (3d Cir. 2009) (same). As relevant here, "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court <u>must</u> decline to decide the pendent state law claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so."    *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) (emphasis in original). "Additionally, the federal court should be guided by the goal of avoiding needless decisions of state law . . . both as a matter of comity and to promote justice between the parties." *Gibbs*, 383 U.S. at 726.    Here, the Court has dismissed the federal claims at an early stage and declines supplemental jurisdiction over any potential state law claims at this time.[8]

## III.    CONCLUSION

For the reasons explained in this Memorandum Opinion, the Court dismisses the federal claims pursuant to its screening authority under § 1915(e)(2)(B).   The § 1983 claims against the NJDOC and Emrich in her official capacity for damages are dismissed with prejudice.   The ADA claims are dismissed without prejudice on the basis of sovereign immunity.   The remaining federal claims are dismissed for failure to state a claim for relief, and the Court declines supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3).    Plaintiff may submit an

---

[8] If Plaintiff submits an amended complaint, he is free to reassert his state law claims.  If Plaintiff states one or more federal claims, the Court will address the state law claims at that time.

Amended Complaint and a request to reopen this matter within 45 days of the date of this

Memorandum and Order.[9]  If Plaintiff does not submit an Amended Complaint within 45 days, the

dismissal of this action shall automatically convert to a dismissal with prejudice.[10]  An appropriate

Order follows.

ROBERT KIRSCH
United States District Judge

---

[9] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  *Id.*

[10] The Court notes that Plaintiff has filed other similar federal actions involving alleged failures to accommodate his disability, several of which have proceeded beyond the screening stage.  If Plaintiff files an amended complaint, the Court may dismiss claims for relief to the extent they are duplicative of other claims currently pending in this District.